IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

6/29/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

| | | |
|---|---|---|
| ROBERT WESLEY SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00620 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ROCKINGHAM HARRISONBURG | ) | By:    Hon. Thomas T. Cullen |
| REGIONAL JAIL, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Robert Wesley Smith, Jr., a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Rockingham-Harrisonburg Regional Jail, Captain Jimmy Wimer, Nurse Amber Dorsey, and Lt. Wilberger. (*See* Compl. [ECF No. 1].) This matter is before the court on Defendants' motion for summary judgment.[1] (ECF No. 16.) For the following reasons, the court will grant the motion.

## I.    BACKGROUND

This matter stems from events that allegedly occurred while Smith was awaiting sentencing at the Rockingham-Harrisonburg Regional Jail ("RHRJ") in Harrisonburg, Virginia. (*See generally* Compl.; Dorsey Decl. at 2) Wimer and Wilberger are both correctional officers at RHRJ. (*See* Compl. at 3–4.) Dorsey is a Registered Nurse and the Medical Team

---

[1] In support of summary judgment, Defendants rely on the declaration of Amber Dorsey ("Dorsey Decl." at 1–6 [ECF No. 17-1])—a Registered Nurse and one of Defendants—who is the Medical Team Administrator for the Rockingham-Harrisonburg Regional Jail (*id.* at 1) where the events at issue allegedly occurred. (*See* Compl.) Dorsey states that her declaration is based "upon records maintained by RHRJ in the ordinary course of business and on [her] personal knowledge." (Dorsey Decl. at 1.) "It is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence." *Mundo-Violante v. Kerry*, 180 F. Supp. 3d 442, 448 (W.D. Va. 2016) (quoting *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008)).

Administrator for RHRJ. (Dorsey Decl. at 1.) Because Smith and Defendants offer distinct accounts of what happened after he arrived at the jail, the court will summarize both versions.[2]

### A. Smith's Factual Allegations

Smith alleges that he was "arrested" and brought to RHRJ on June 20, 2025. (Compl. at 5.) After arriving, Smith spoke with an unnamed nurse and told her that he was "on the MAT program"[3] and was taking Suboxone.[4] (*Id.*) After administering a drug test, the nurse told Smith that he had tested positive for Suboxone, Gabapentin, phencyclidine (commonly known as "PCP"), oxycodone, Ecstasy, Fentanyl, methadone, Kratom, Ketamine, and methamphetamine. (*Id.*) Smith told the nurse that there was "no way" he had tested positive for all those drugs and asked to be re-tested, but she denied his request. (*Id.*) Smith also asked the nurse, if he had tested positive for all those drugs, "why wasn't [he] taken to have medical help [] because some of those [drugs] are deadly" in combination with one another? (*Id.*) According to Smith, his supposedly positive drug test prevented him from receiving Suboxone. (*Id.*)

Smith claims that, after his drug test, he "put in numerous requests [and] grievances" at RHRJ to be re-tested and/or "put back on Suboxone," but that his requests and grievances were denied. (*Id.*) According to Smith, he was "forced to go through [Suboxone]

---

[2] Smith's factual allegations come from his complaint, which is not verified (*see* Compl.), and therefore cannot "be considered for purposes of summary judgment." *Monchéry v. Dryden*, No. 7:23-cv-00461, 2025 WL 2842399, at *8 (W.D. Va. Oct. 7, 2025) (citing *Goodman v. Diggs*, 986 F.3d 493, 499 (4th Cir. 2021)); *see also Goodman*, 986 F.3d at 495 n. 2 ("A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020))). But because Smith's factual allegations provide context for his claims, the court will nevertheless summarize his allegations.

[3] "MAT" stands for "medication-assisted treatment," and is used to treat drug addiction. *See Chamberlain v. Va. Dep't of Corr.*, No. 7:20-cv-00045, 2021 WL 4100354, at *1 (W.D. Va. Sept. 9, 2021).

[4] Suboxone is used to treat opioid dependence. Drugs.com, Suboxone, available at https://www.drugs.com/suboxone.html (last visited June 25, 2026).

withdrawal[ ]" because Wimer, Wilberger, and Dorsey "refused to administer another drug test" to Smith. (*Id.*) Smith also claims that he "tried to tell" these Defendants that, if he had all "those [drugs] in his system [he] would have been in instant withdrawal," that one "couldn't fail for methamphetamines without [also] failing for amphetamines," and that "no drug test" tests for Ecstasy. (*Id.* at 5–6.) Smith also alleges that he asked these Defendants, if he had tested positive for all those drugs, "why wasn't [he] put on detox for all of them[,] . . . given proper medical attention[,] or retested"? (*Id.* at 6.)

According to Smith, he was "forced to sit in a classification cell with no medical attention" and did not see a doctor until "weeks later." (*Id.*) When Smith eventually saw a doctor, Wilberger "was in the room." (*Id.*) After Smith asked the doctor about his "medicine," Wilberger allegedly told Smith to "shut up" and that he "wasn't getting [Suboxone] in . . . jail." (*Id.*) Smith claims that he was "cruelly forced to go through Suboxone withdrawals" and accordingly "went weeks without being able to sleep." (*Id.*)

## B. Defendants' Factual Allegations

In her affidavit, Dorsey states that, on or about June 21, 2025, Smith was seen in booking by a Nurse Rosa Mercedes after he complained about finger pain. (Dorsey Decl. at 3.) At that time, Smith advised Nurse Mercedes that he was taking Suboxone. (*Id.*) Nurse Mercedes then explained to Smith that, to continue receiving Suboxone under RHRJ's MAT policy, he would have to complete a urine drug screen and only test positive for Suboxone. (*Id.*) After Smith "nodded in understanding" and completed a urine drug screen, he tested positive for Suboxone, Fentanyl, Gabapentin, Ketamine, Kratom, Ecstasy, methamphetamines, methadone, oxycodone, and PCP. (*Id.*) Nurse Mercedes then told Smith that he did not qualify for MAT, and Smith stated "okay." (*Id.*) He did not request to be re-

tested and, at that time, appeared to Nurse Mercedes to be under the influence of narcotics. (*Id.* at 3–4.) Later that day, Nurse Bryce Miller saw Smith in booking again after he complained of chest pain. (*Id.* at 4.) Smith did not request to be re-tested then either. (*Id.*)

On June 22, 2025, Nurse Mercedes completed Smith's "medical intake," during which Smith stated that he uses methamphetamine daily and had last used the drug on June 20, 2025. (*Id.*) Nurse Mercedes "placed Smith on the withdrawal check to be monitored pursuant to" RHRJ's policies and ordered Acetaminophen and electrolyte replacement drinks for Smith to treat his withdrawal symptoms. (*Id.*) Smith did not request to be re-tested at that time. (*Id.*)

On July 4, 2025, during a "sick call" with a Nurse Rodriguez, Smith requested Suboxone. (*Id.*) After Nurse Rodriguez reminded Smith that he had failed his drug screen and stated that "the window to start Suboxone had closed," Smith "verbalized understanding." (*Id.*)

## C. Procedural History

On August 28, 2025, Smith executed his complaint. (Compl. at 9.) Smith claims that Defendants "denied [him] proper medical care and treated [him] inhumane[ly]." (*Id.* at 5.) Smith requests monetary damages and that he "be given [his] medicine." (*Id.* at 8.)

On December 16, 2025, Defendants filed the instant motion for summary judgment. (ECF No. 16.) Although Smith was provided notice of the motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam) (*see* ECF No. 18), he did not file any response in opposition.[5]

---

[5] Indeed, Smith has not filed anything on the docket since September 26, 2025. (*See* ECF No. 6.)

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

## III.    ANALYSIS

Smith is proceeding under 42 U.S.C. § 1983, which permits an aggrieved party to file a civil action against a person for actions, taken under color of state law, that violate his rights under the Constitution or laws of the United States. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Smith asserts several claims against Defendants, and the court addresses those claims in turn.

### A. Deliberate Indifference

Smith claims that Defendants "denied [him] proper medical care and treated [him] inhumane[ly]." (Compl. at 5.) The court understands Smith to claim that Defendants were deliberately indifferent to his serious medical needs in violation of the Constitution.

In his complaint, Smith states that he was "waiting to be sentenced" when the events at issue allegedly occurred. (Compl. at 3.) Courts disagree as to whether claims brought by

- 6 -

inmates awaiting sentencing arise under the Eighth Amendment or the Fourteenth Amendment. *See Fisherman v. McGriff*, No. 17-CV-2320, 2020 WL 1330176, at *2 n.4 (D. Minn. Mar. 23, 2020) (collecting cases). And neither the Fourth Circuit nor the Supreme Court appears to have addressed the issue. At least one court in this circuit, however, has applied the Eighth Amendment to claims brought by an inmate awaiting sentencing. *See Caricofe v. Rockingham-Harrisonburg Jail*, No. 7:21-cv-00137, 2021 WL 2827300, at *1–2 (W.D. Va. July 7, 2021) (Urbanski, J.). And in the absence of Fourth Circuit or Supreme Court authority to the contrary, this court will do the same.[6]

The Eighth Amendment's prohibition against cruel and unusual punishment protects against the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state an Eighth Amendment deliberate indifference claim, a prisoner must show both "an objective component and a subjective component." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). "The objective component . . . is satisfied by a serious medical condition[,]" meaning one that "has 'been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* "The subjective component is satisfied by proof of a defendant's deliberate indifference[,]" which is shown where a defendant "had actual knowledge of the [plaintiff's] serious medical needs and the related risks [] but nevertheless disregarded them." *Id.*

Smith has failed to show that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. As noted, Smith did not respond to the

---

[6] Moreover, Defendants characterized Smith's deliberate indifference claim as an Eighth Amendment claim in their briefing. (*See* ECF No. 17 at 6.) And as noted, Smith failed to respond to the motion for summary judgment and therefore has not objected Defendants' characterization of his claims.

motion for summary judgment, and the only filing of his that outlines his factual allegations is his unverified complaint. "As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Goodman*, 986 F.3d at 498; *Monchéry*, 2025 WL 2842399, at *8 (noting that an unverified complaint cannot "be considered for purposes of summary judgment"); *see also Clarke v. Thornton*, 515 F. Supp. 2d 435, 438 (S.D.N.Y. 2007) ("[E]ven a pro se party cannot defeat summary judgment by 'relying on the allegations in [the] complaint[.] . . . [T]he burden to produce sufficient factual pleadings remains." (quoting *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007)). Without sufficient factual support from Smith, no reasonable jury could find that Defendants were deliberately indifferent to his serious medical needs. (*See* ECF No. 18 at 1 (advising Smith that "[t]o survive summary judgment once the moving party files the motion and alleges the absence of a genuine issue of material fact, the nonmoving party [(*i.e.*, Smith)] must establish that there are specific material facts in dispute.")

But even if the court were to consider his unsworn allegations, Smith's claim would still fall well short. Smith alleges that he "was forced to go through [Suboxone] withdrawals," which prevented him from sleeping. (Compl. at 5–6.) Although "[s]everal courts have found that symptoms of alcohol and drug withdrawal qualify as a serious medical need," *Thornhill v. Aylor*, No. 3:15-cv-00024, 2016 WL 8737358, at *9 (W.D. Va. Feb. 19, 2016) (collecting cases), Smith does not allege that Defendants were aware he was unable to sleep (*see generally* Compl.). To satisfy the subjective prong of his deliberate-indifference claim(s), Smith must show that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and that Defendants actually "dr[ew] the inference." *Farmer v.*

- 8 -

*Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that [he or she] should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* at 838. Accordingly, the court will enter judgment for Defendants on Smith's deliberate indifference claim(s).

### B. Claim Against Wilberger

Smith claims that Wilberger told him to "shut up" and that he "wasn't getting [Suboxone] in . . . jail." (Compl. at 6.) In making this allegation, the court understands Smith to claim that Wilberger's alleged verbal abuse violated the Constitution. But if Smith intended to raise such a claim, it fails. For one, the allegations in support of this claim are only stated in Smith's unverified complaint and therefore cannot be used to defeat summary judgment. *See Monchéry*, 2025 WL 2842399, at *8. Moreover, "verbal abuse, without more, do[es] not state a cognizable claim under § 1983." *Wilson v. McKeller*, 254 F. App'x 960, 961 (4th Cir. 2007) (per curiam) (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)). Accordingly, the court will enter judgment for Wilberger on Smith's verbal abuse claim.[7]

### C. Claim(s) Against RHRJ

In addition to the individual Defendants, Smith named RHRJ as a Defendant. (*See* Compl. at 1.) But RHRJ, as a local jail facility, is not a person subject to suit under § 1983. *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) ("[T]he [j]ail is not a person under § 1983" and thus "lacks the capacity to be sued as a jail."). Accordingly, the court will enter judgment for RHRJ on Smith's claim(s) against it.

---

[7] To the extent Smith meant to bring a deliberate-indifference claim against Wilberger based on his alleged statement that Smith would not be receiving Suboxone, this claim fails for the same reasons as his other deliberate-indifference claim(s).

## D. Injunctive Relief

In addition to monetary damages, Smith asks that he "be given [his] medicine" (Compl. at 9), which the court construes as a request for injunctive relief. But as Defendants have noted, Smith has been transferred out of RHRJ. (Dorsey Decl. at 5.) Thus, to the extent Smith seeks injunctive relief from *Defendants*, his request is now moot. *See Farabee v. Yaratha*, 801 F. App'x 97, 107 (4th Cir. 2020) ("Farabee's claim for injunctive relief against Vauter is moot because he's no longer in her custody. Instead, Farabee is in the custody of the Virginia Department of Corrections."). Accordingly, the court will enter judgment for Defendants as to Smith's claim for injunctive relief.

## IV.    CONCLUSION

For the reasons stated above, the court will grant Defendants' motion for summary judgment and will enter judgment in Defendants' favor as to Smith's claims against them.[8]

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of June, 2026.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Defendants also argue that they are entitled to qualified immunity as to Smith's claims against them. (ECF No. 17 at 12–13.) But having concluded that judgment shall be entered in their favor on other grounds, the court need not—and will not—address Defendants' qualified immunity argument.